NOT DESIGNATED FOR PUBLICATION

No. 127,028

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

JENNIFER SAUNDERS,
*Appellee*,

and

JOHN BARRY GRZESINSKI,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; LINDA D. KIRBY, judge. Submitted without oral argument. Opinion filed December 5, 2025. Reversed and remanded with directions.

*Stephen M. Turley* and *Krystle M.S. Dalke*, of Hinkle Law Firm LLC, of Wichita, for appellant.

*Chris Randle,* of Penner Lowe Law Group, LLC, of Wichita, for appellee.

Before HURST, P.J., ATCHESON and ISHERWOOD, JJ.

PER CURIAM: After fewer than five years of marriage, Jennifer Saunders filed a petition seeking a divorce from John Grzesinski. Throughout the proceedings, the parties generally disputed the property division and valuations. After trial, the district court issued an order dividing the property, but Grzesinski objected on several grounds, including the division of his military retirement pay, and twice moved to amend. In addressing part of Grzesinski's concerns, the district court ordered the parties to work with an attorney identified as an expert in military retirement benefits. Ultimately, the

1

district court largely denied Grzesinski's requests and issued a final memorandum order in which it divided the marital property, including Grzesinski's military retirement pay.

Grzesinski is generally displeased with the district court's decision. On appeal, he claims the district court erred in its property division, violated his due process rights, and abused its discretion in ordering him to pay a portion of Saunders' attorney fees. While district courts generally have broad discretion to divide assets in a divorce proceeding, that discretion is contingent on appropriate application of the law. Here, the district court misunderstood its broad discretion and in so doing erroneously bound itself to federal law in the valuation and division of Grzesinski's military retirement pay. Moreover, the district court erred in its identification of marital property related to the party's 401(k) accounts.

The property division through a divorce proceeding must be just and reasonable. This court provides no opinion as to whether the district court's ultimate division accomplished that requirement but finds that the court's legal reasoning was flawed. Accordingly, the district court's property division is reversed and remanded with directions as provided herein. The ultimate property division may well be identical or similar to what was previously decided, but in doing so that must be made with a full understanding of the applicable law.

FACTUAL AND PROCEDURAL BACKGROUND

The parties married in October 2014, at which time Grzesinski was serving in the United States Navy. Grzesinski continued his military service with the Naval Reserves throughout the marriage. On June 29, 2018, after almost four years of marriage, Saunders filed a petition for divorce.

The district court's subsequent temporary order awarded Saunders possession of the parties' marital home and ordered her to make the future mortgage payments. In a pretrial order, the district court set Saunders' filing date of June 29, 2018, as the valuation date for the parties' marital property. The parties filed competing property division spreadsheets, and the case proceeded to trial in June 2020. At trial, the parties disputed the valuation and division of their marital property, including Grzesinski's military retirement pay. Grzesinski testified that he entered the military in 1993; accumulated 27 years of military service in total; and had completed 20 years of service before marriage, which qualified him for retirement pay at 60 years old.

On January 15, 2021, the district court issued a memorandum order and divorce decree in which it valued and divided the parties' marital property and debt. The portion of the order dividing Grzesinski's military retirement pay provided:

"[Saunders] is awarded the portion of any military or reserve military pension and/or retirement due to [Grzesinski], whether payable currently or in the future, in proportion to the length of the marriage *as permitted by federal law*. [Saunders'] attorney is directed to draft such domestic relations order. [Grzesinski] is ordered to provide any requested information regarding such retirement and/or pension timely. The court retains jurisdiction to enforce such award." (Emphasis added.)

The district court's order also made the following divisions of certain financial accounts:

"**Home bank account ending in (4110)** is marital property and allocated to [Grzesinski] at value of $451.
"**Home bank account ending in (4228)** is marital property and allocated to [Grzesinski] at value of $4,445.
. . . .
"**[Saunders'] MGM resorts 401(k)** is valued at $86,432.57 and the total is reduced by 20% for taxes. Of the reduced total value, $43,207.20 is found to be

3

> [Saunders'] premarital property and is not subject to division; and $25,938.87 is found to be marital property and assigned to [Saunders].
>
>     . . . .
>
>     "**[Grzesinski's] Spirit 401(k)** valued at $19,437 reduced by 20% for taxes is marital property and assigned to [Grzesinski] at value of $17,919.01."

The district court allocated the marital home to Saunders and credited her for the mortgage payments she made during the pendency of the case.

Saunders prepared a proposed domestic relations order as directed by the court, but the parties could not agree on some of the final language. Thus, on June 3, 2021, under Kansas Supreme Court Rule 170, Saunders asked the district court to "review the [proposed journal entry] and the objections from [Grzesinski], resolve any conflicts, revise the order as necessary, and sign a final order and judgment without hearing." Kansas Supreme Court Rule 170(d)(3) states: "If—after reasonable effort to confer—the parties have not agreed on the terms of the order, the drafter must submit the original draft and the objection to the court and the court must settle the order, with or without a hearing." (2025 Kan. S. Ct. R. at 230).

On June 16, 2021, the district court sent a letter to address Grzesinski's "objections to third draft of Journal Entry that was submitted by" Saunders' counsel. In its letter, the district court addressed the division of Grzesinski's military retirement pay:

> "The court awarded [Saunders] the military pension and/or retirement due [Grzesinski]…. in proportion to the length of marriage. The length of the marriage is 82 months, which is to be divided by the number of months that [Grzesinski] served and divided by 2 (for 20 years of service 82 would be divided by 240 months and again by 2 for award of 17.08%). The conventions used by the military to calculate may make these calculations. [Saunders] *is awarded the full amount to which the federal laws and guidelines provide. Counsel is directed to consult with administrator of military pensions to determine the formula for such calculation*." (Emphasis added.)

4

Grzesinski objected to the district court's military retirement decision for several reasons, including the court's reliance on federal guidelines. In an email to the district court, Grzesinski argued that the district court should have valued the military retirement pay as of the date of the divorce filing—not the date of the divorce. He also argued:

"In addition, [Grzesinski] served 28.1 years in the military not 20 year[s] and there was very little increase in his pension amount after the marriage due to his full-time military service prior to the marriage. In the court's memorandum, it simply stated that whatever military retirement division rules allowable by law be used. In calculating the percentage, the correct figures need to be used. Also, [Saunders] made up a figure of 20% and put it in the order. The court's memorandum ruling language is the language that should be used in the journal entry."

Notwithstanding Grzesinski's objections, the district court's subsequent journal entry provided:

"[Saunders] is awarded the portion of any military or reserve military pension and/or retirement due to [Grzesinski], whether payable currently or in the future, in proportion to the length of the marriage as permitted by federal law, to wit, [Saunders] is awarded 17% of the Respondent's military retirement."

On August 10, 2021, Grzesinski filed a motion to alter or amend the judgment, attached to which was a declaration and record of Grzesinski's retirement points accrued during his service with the Navy—evidence that was not presented to the court at trial. In his motion, Grzesinski argued the district court undercounted his length of military service and overcounted the length of the marriage. Specifically, Grzesinski asserted that the length of the marriage should be measured from the date of marriage to the date Saunders filed for divorce—a period of 44 months—and not the 82 months the district court used in its calculation. Grzesinski emphasized that "all other assets divided between the parties, including the retirement accounts of petitioner, the date of filing the divorce was used as the valuation date." Grzesinski claimed Saunders was only entitled to the

value of half of the retirement points he accrued in the 44-month period from the date of marriage to the date Saunders filed for divorce and that the court's 17.08% figure was grossly in excess of what was equitable.

On March 9, 2023, the district court ruled on Grzesinski's motion. Responding to Grzesinski's statement that the district court's decision "would also allow [Saunders] to receive a portion of [Grzesinski's] military pension accrued before marriage," the district court found Grzesinski "did not raise this issue at the time of trial" and made no persuasive argument that granting Saunders a portion of his military pension was not "proper or equitable." The court stated that the award of vested or unvested retirement pay was contemplated in K.S.A. 23-2801. The court also determined the new evidence Grzesinski presented with his motion—his declaration and record of retirement points—was not appropriate evidence on which to amend its judgment because Grzesinski could have discovered and produced the evidence at trial and declined to amend its ruling.

The district court amended its memorandum order and divorce decree as to its determination of the length of the parties' marriage: "The parties were married on October 11, 2014 and were divorced by decree on January 15, 2021. The duration of the marriage was 84 months and 14 days. Petitioner filed for divorce on June 29, 2018." The district court relied upon K.S.A. 23-2711(a)(1) to determine that the parties' marriage terminated when the court filed the divorce decree. The district court further explained that "K.S.A. 23-2802(b) merely authorizes use of date of filing as one of three alternative dates of valuation of assets." See K.S.A. 23-2802(b) ("Upon request, the trial court shall set a valuation date to be used for all assets at trial, which may be the date of separation, filing or trial as the facts and circumstances of the case may dictate.").

At the end of its ruling, the district court noted that it created confusion between language from its Journal Entry and Decree of Divorce and a poorly labeled example used in the letter to the parties addressing Grzesinski's objections to the proposed journal

6

entry. The court clarified that its letter "stated, as an example in parentheses, a formula for an 82-month marriage with a 20-year period of service for [Grzesinski]." Also, according to the district court, "[t]he conventions used by the military, including duration of the marriage, are to be used to calculate [Saunders'] interest in [Grzesinski]'s pension. [Saunders] was 'awarded the amount to which federal laws and guidelines provide.'" The district court therefore amended its journal entry and divorce decree to provide the following:

> "**Military Retirement and Pension.** [Saunders] is awarded the portion of any military or reserve military pension and/or retirement due to [Grzesinski], whether payable currently or in the future, in proportion to the length of the marriage as permitted by federal law."

The district court also ordered the parties to secure assistance of a "qualified expert in military retirement law, to calculate the full award due to [Saunders] under federal military law . . . and draft the Retirement Benefit Court Order to be reviewed by [Grzesinski's] counsel per Rule 170." Because it found Grzesinski failed to "provide the necessary information at time of trial making the order for a subsequent calculation necessary," the district court also ordered Grzesinski to pay for the expert's services.

On April 6, 2023, Grzesinski filed a second motion to alter or amend in response to the district court's order on his previous motion. In this second motion, Grzesinski objected "to the Court's March 9, 2023, order that require[d] him to pay for the services of Marshall S. Willick of the Willick Law Group to calculate the portion of his military pension awarded" to Saunders, and to the court's statement that Grzesinski failed to provide necessary information at trial necessitating the later calculation. Grzesinski argued he presented evidence of the length of his military service at trial and that the record of his retirement points was not available at trial because he had not yet retired. Additionally, Grzesinski objected to the court's order that he pay the military retirement expert's fee and requested the court to amend its ruling to strike the statement that

7

Grzesinski's failure to pay for the expert's services or provide information would be deemed acquiescence to the district court's award to Saunders of 17% of his military retirement. In response, Saunders requested that the district court deny Grzesinski's motion and award her $5,000 in attorney fees.

The district court denied Grzesinski's second motion to amend, reasoning in part that it "was [Grzesinski]'s burden alone to provide to the court at trial a credible calculation of the amount or proportion he claimed as pre-marital property. He failed to do so. The costs of employing such expert are properly allocated to [Grzesinski] and have provided a benefit to him." In the same order, the district court explained:

> "The court ordered [Grzesinski]'s military retirement to be divided between premarital and marital portions according to federal law pertaining to division of military retirements. Per federal law, the marital portion is determined from the date of marriage to the date of divorce and not to the date of filing for divorce. The federal law pertaining to military retirements was enacted by the federal government specifically to address multiple policy issues regarding service members and their spouses. [Grzesinski] did not object to application of federal law at trial or in his first motion to alter or amend nor did he provide statutory, case law, facts, or persuasive reasoning to show the court why the federal law should be applied in all aspects of the calculation of federal military benefits except to the length of the marriage. The court denies [Grzesinski's] motion to alter or amend the order that federal law will apply to the calculation of the premarital and marital portions of [Grzesinski]'s Military Retirement."

The district court thereafter adopted the expert's proposed division award.

The military retirement expert identified 18.5808% of Grzesinski's military retirement pay as marital property subject to division and, therefore, that Saunders should be awarded 9.2904%. The district court's order did not explain how the expert arrived at these figures. It ordered Grzesinski "to pay [Saunders] directly 9.2904% of each military retirement benefit payment he receives" and provided other requirements relating to cost

8

of living increases and documentation. The district court requested Saunders submit a billing statement for attorney fees and costs, and in a supplemental order, awarded Saunders attorney fees in the amount of $2,094.60. The court reasoned that "[Grzesinski] has caused [Saunders] to incur unnecessary attorney fees, interest and damages for delay related to this Motion."

The district court filed an additional order in which it "set out terms dividing the military retirement benefits, in sufficient detail to correctly allocate [Saunders'] time-rule percentage in accordance with the parties' *Decree of Divorce*." It "determined that [Saunders] is entitled to her time-rule percentage of [Grzesinski]'s military retirement benefits." The district court divided the total number of retirement points Grzesinski accrued during the marriage (1,076) by the total number of retirement points he had earned by the date of divorce (5,468) to yield 19.6781% of marital property. It then halved that amount to determine Saunders' percentage of Grzesinski's military retirement pay: "[Saunders] is entitled to 9.8391% of [Grzesinski]'s military retirement benefits."

Grzesinski appeals.

DISCUSSION

On appeal, Grzesinski alleges that the district court erred: (1) in its division of his military retirement pay; (2) in its division of two bank accounts; (3) in its calculation of the value of the parties' 401(k) retirement accounts; (4) by crediting Saunders with the mortgage payments made after the temporary order; (5) by requiring an outside expert, requiring Grzesinski to pay the expert fee, and accepting the expert's opinion regarding division of the military retirement pay without a hearing; and (6) when it ordered Grzesinski to pay Saunders' attorney fees. Grzesinski does not object to the district court's property division regarding other property nor does Saunders file a cross-appeal alleging any errors.

9

## I.   THE DISTRICT COURT'S PROPERTY DIVISION

In Kansas, the district court has broad discretion to divide marital property in a divorce proceeding, and this court will not disturb such an award absent a clear showing of abuse of that broad discretion. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002). The district court's authority to divide property includes military retirement benefits. See K.S.A. 23-2802(a), (c); see also *In re Marriage of Williams*, 307 Kan. 960, Syl. ¶¶ 1-2, 417 P.3d 1033 (2018) (Kansas statutes grant Kansas district courts subject-matter jurisdiction to hear divorce actions and to divide property, including military retirement benefits.); *In re Marriage of Babin*, 56 Kan. App. 2d 709, Syl. ¶ 1, 437 P.3d 985 (2019) (State courts may treat military retirement pay as marital property.); 10 U.S.C. § 1408 (Uniformed Services Former Spouses' Protection Act [USFSPA]). Therefore, regarding the district court's property division, this court reviews Grzesinski's claims of error for an abuse of discretion. See *In re Marriage of Monslow*, 259 Kan. 412, 414, 912 P.2d 735 (1996).

A district court abuses its discretion when its judicial action is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *Einsel v. Einsel*, 304 Kan. 567, Syl. ¶ 1, 374 P.3d 612 (2016). An error of law occurs when the district court's decision is guided by erroneous legal standards or conclusions. 304 Kan. 567, Syl. ¶ 1. Therefore, even when applying the abuse of discretion standard, this court applies de novo review to the district court's legal conclusions. See *State v. Gary*, 282 Kan. 232, 236, 144 P.3d 634 (2006) (applying de novo review to statutory interpretation in an abuse of discretion review). In other words, this court gives no deference to the district court's legal analysis and has unlimited review to determine whether the district court made an error of law when it exercised its broad discretion. See *In re Marriage of Meek*, 64 Kan. App. 2d 270, Syl. ¶ 2, 551 P.3d 127 (2024) (The district court's determination about which property is defined as marital property pursuant to

10

K.S.A. 23-2801[a] is a question of law subject to de novo review.). Similarly, when the parties' dispute requires statutory interpretation, this court's review is unlimited, meaning no discretion is afforded the district court's statutory interpretation. *In re Marriage of Traster*, 301 Kan. 88, 98, 339 P.3d 778 (2014). Grzesinski, as the party asserting the error, bears the burden of demonstrating the district court's abuse of discretion. See *In re Parentage of R.R.*, 317 Kan. 691, Syl. ¶ 3, 538 P.3d 838 (2023).

The first step in determining a property division award is to identify the marital property. See K.S.A. 23-2802(a). Unlike states that have adopted community property principles where courts must track separate and marital property, Kansas statutes prescribe a total divisibility principle where the court "can divide all of the real property and personal property owned at the time of filing in a just and reasonable manner regardless of its source or manner of its acquisition." 2 Elrod, Kansas Law and Practice: Kansas Family Law § 10:1 (2022-2023 ed.); see K.S.A. 23-2801; K.S.A. 23-2802(a); see also *In re Marriage of Meek*, 64 Kan. App. 2d at 281. In Kansas, separate property is only recognized *prior* to a divorce filing. K.S.A. 23-2601; K.S.A. 23-2801(a). Once a petition for divorce is filed, all property owned by either party—including separate property as defined in K.S.A. 23-2601—becomes marital property. K.S.A. 23-2801(a).

The second step in determining a property division award is to consider all marital property and make a just and reasonable division of that property. See K.S.A. 23-2802(a), (c). In determining what is just and reasonable, the district court shall consider the following criteria:

> "(1) The age of the parties; (2) the duration of the marriage; (3) the property owned by the parties; (4) their present and future earning capacities; (5) the time, source and manner of acquisition of property; (6) family ties and obligations; (7) the allowance of maintenance or lack thereof; (8) dissipation of assets; (9) the tax consequences of the property division upon the respective economic circumstances of the parties; and (10)

11

*such other factors as the court considers necessary to make a just and reasonable division of property.*" (Emphasis added.) K.S.A. 23-2802(c).

In its overall property division, then, the district court must consider the "time, source and manner of acquisition of property," which could include whether the property was owned by one party before the marriage or was acquired with funds from only one party. See K.S.A. 23-2802(c). Therefore, the just and reasonable considerations for property division include consideration of concepts typically associated with separately owned property without excluding that property from the definition of marital property subject to division. See K.S.A. 23-2802(a), (c); K.S.A. 23-2601. The district court must look at the financial position of the parties and make an equitable, just, and reasonable property division—but that does not require an equal property division. See *In re Marriage of Rodriguez*, 266 Kan. 347, 352-53, 969 P.2d 880 (1998); see also K.S.A. 23-2802(c).

Having explained the process, this court must address whether the district court abused its discretion as to the specific property issues raised on appeal.

a. *Military retirement pay*

Grzesinski generally argues that the district court erred in three ways when dividing his military retirement pay: (1) the district court misunderstood its discretionary authority to award the military retirement pay; (2) the district court lacked jurisdiction to award Saunders any portion of Grzesinski's military retirement pay accrued after Saunders filed her petition for divorce; and (3) the district court incorrectly used multiple dates of valuation in dividing the parties' marital property.

The federal Uniformed Services Former Spouses' Protection Act (USFSPA) authorizes any state court to treat "disposable retired pay payable to a member" of the

12

military "either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408(c)(1); see *In re Marriage of Williams*, 307 Kan. at 965. Therefore, "the USFSPA created a statutory grant in federal law permitting state courts to treat military pensions in a divorce proceeding according to the laws of that jurisdiction." *Fox v. Fox*, 50 Kan. App. 2d 62, 64, 322 P.3d 400 (2014). This means that the district court must look to Kansas law to determine how or whether to divide military retirement pay.

Kansas law explicitly includes military retirement pay as marital property subject to equitable division. Under K.S.A. 23-2801(a), "[a]ll property owned by married persons, *including the present value of any vested or unvested military retirement pay . . .* shall become marital property at the time of commencement by one spouse against the other of an action in which a final decree is entered for divorce, separate maintenance, or annulment." (Emphasis added.) Additionally, under K.S.A. 23-2802(a), a divorce decree "shall divide the real and personal property of the parties, *including any retirement and pension plans*, whether owned by either spouse prior to marriage, acquired by either spouse in the spouse's own right after marriage or acquired by the spouses' joint efforts." (Emphasis added.)

Grzesinski's primary complaint is that the district court "misinterpreted the law and tried to mechanically apply a federal law that does not exist." Therefore, Grzesinski argues that the district court erroneously applied the law because it failed to exercise its discretionary authority to determine how to award Grzesinski's military retirement pay to Saunders. While Saunders concedes that the USFSPA does not require a state court to use a specific formula to divide military retirement pay in divorce, she contends that the district court did not claim to be constrained by the federal formula. Rather, Saunders asserts that the award was made within the "permissible and legal framework."

13

A district court's failure to exercise its legal discretion through an erroneous belief that it was constrained by a particular law constitutes an abuse of discretion. See *State v. Tafolla*, 315 Kan. 324, Syl. ¶ 3, 508 P.3d 351 (2022) ("One way in which an offender can demonstrate an abuse of discretion is to show that the district court failed to exercise its discretion, either because it refused to do so or because it failed to discern that it was being called upon to exercise discretion.") Therefore, whether the district court abused its discretion in dividing Grzesinski's military retirement pay turns on whether the district court erroneously believed that federal law supplanted its discretionary authority to fashion an award of Grzesinski's military retirement pay.

There are multiple instances that suggest the district court believed federal law controlled its division of Grzesinski's military retirement pay. For example, in its letter to the parties addressing Grzesinski's objections to the proposed journal entry, the district court stated Saunders "is awarded the full amount *to which the federal laws and guidelines provide*" and directed the counsel to "consult with administrator of military pensions to determine *the formula* for such calculation." (Emphases added.) Additionally, in its denial of Grzesinski's first motion to amend, the district court stated, "*The conventions used by the military*, including duration of the marriage, are to be used to calculate [Saunders'] interest in [Grzesinski]'s pension. [Saunders] was 'awarded *the amount to which federal laws and guidelines provide*.'" (Emphases added.) Finally, in its final order, the district court stated, "The share of the military retired pay that each party is entitled should be determined pursuant to the 'time-rule' formula which designates the number of points earned during the marriage as a numerator, and the total number of points earned by [Grzesinski] at the Date of Division as the denominator."

While these statements strongly suggest the district court believed that federal law prescribed a specific formula for its division and award of Grzesinski's military retirement pay, it is possible that the district court was also aware—or at some point became aware—that it was not required to apply this formula but embraced the formula

14

as a just and reasonable division mechanism. However, the record does not demonstrate that the district court made that distinction. Therefore, it appears the district court believed it was required to apply the federal formula in dividing Grzesinski's military pay, and that was an error of law. Thus, the district court abused its discretion in dividing Grzesinski's military retirement pay by limiting its own discretion to formulate a just and reasonable division under Kansas law. See *State v. Stewart*, 306 Kan. 237, Syl. ¶ 5, 393 P.3d 1031 (2017) ("[I]t is an abuse of discretion to refuse to exercise discretion or to fail to appreciate the existence of the discretion to be exercised in the first instance.").

The district court valued most of the property as of the filing date of the divorce petition, but used the date of the divorce decree, which was about two years later, for valuing Grzesinski's military pay. Grzesinski argues this valuation date was an error in three ways.

First, Grzesinski argues the district court erred in believing federal law required it to use the divorce decree date to value the military retirement pay. The term "disposable retired pay" is the "total monthly retired pay to which a *member* is entitled." (Emphasis added.) 10 U.S.C. § 1408(a)(4)(A). Under federal law, in the event of divorce before retirement, the military member's "disposable retired pay" is calculated as "the amount of retired pay to which the *member* would have been entitled using the member's retired pay base and years of service *on the date of the decree of divorce, dissolution, annulment, or legal separation*, as computed under section 1406 or 1407 of this title, whichever is applicable . . . ." (Emphases added.) 10 U.S.C. § 1408(a)(4)(B)(i). This provides the total value of Grzesinski's military retirement pay subject to division in the event of divorce. However, it does not require the district court to use the divorce decree date for valuing the *award* of military retirement pay to the former spouse. See 10 U.S.C. § 1408(a)(4)(B). Nor does it mean the court cannot. Grzesinski does not contend that the court violated or misinterpreted federal law by improperly identifying his "disposable retired pay." Rather, he claims the court erred by believing it was required to consider the

15

entire amount for division, as it could have valued his military retirement pay at the earlier divorce petition date. Although the divorce decree date sets the outer limit for determining the "disposable retired pay" subject to division, the federal law does not require the state court to use that date in fashioning the property division award. The district court had discretion to pick a different date subject to the statutory constraints in K.S.A. 23-2802(b). Therefore, if the district court believed it was required by federal law to use the divorce decree date to value Grzesinski's military retirement account, that was an error.

Second, Grzesinski contends the district court erred in using the divorce decree date because it lacked jurisdiction over any increase in the value of the military retirement between the date of the divorce petition and the date of the divorce decree. In support of this, Grzesinski argues that the use of present tense in the statute defining "marital property" means only the amount or value of the retirement account at the time of the divorce petition filing is considered marital property. Not only does this argument lack legal and factual support, it would also mean that Kansas courts could only value marital property at a date later than the divorce petition, which is contrary to the plain statutory language and well-established law. See K.S.A. 23-2802(b) ("Upon request, the trial court shall set a valuation date to be used for all assets at trial, which may be the date of separation, filing or trial as the facts and circumstances of the case may dictate."); see *In re Marriage of Rodriguez*, 266 Kan. at 353 ("Kansas law 'gives the court discretion to consider all of the property, regardless of when acquired, to arrive at a just and reasonable division.' [Citation omitted.]"). This would also encourage savvy petitioners to time a divorce petition to avoid known value increases of existing property/accounts.

Marital property frequently includes accounts that fluctuate in value based on market conditions or inputs or deductions, including investment accounts; insurance products; retirement accounts; and even real property. Although the district court must identify the marital property existing as of the date of the divorce petition, the court may

16

determine the property's value as of a later date. K.S.A. 23-2802(b) ("The trial court may consider evidence regarding changes in value of various assets before and after the valuation date in making the division of property."). Identifying the existence of marital property is not the same as determining the present value of that property. See *In re Marriage of Harrison*, 13 Kan. App. 2d 313, 316, 769 P.2d 678 (1989). The district court had jurisdiction over Grzesinski's retirement accounts, including their entire value as of the date of divorce decree.

Third, Grzesinski claims the district court must value all the marital property as of the same date. See, e.g., *In re Marriage of Cray*, 254 Kan. 376, Syl. ¶ 3, 867 P.2d 291 (1994). According to the Kansas Supreme Court's opinion in *Cray*, "When the time of valuation becomes an issue in a contested case," the trial court should set the valuation date and "all the marital assets shall be valued as of the same date." 254 Kan. 376, Syl. ¶ 3. However, as panels of this court have noted, the applicable statutory language regarding how district courts must set property values in a divorce proceeding has changed since the court's decision in *Cray*. See *In re Marriage of Thrailkill*, 57 Kan. App. 2d 244, 261-62, 452 P.3d 392 (2019) (finding no abuse of discretion where court treated loan taken out after valuation date as marital debt); *In re Marriage of Wood*, No. 122,211, 2020 WL 6685537, at *11 (Kan. App. 2020) (unpublished opinion). While valuing all the marital property on the same date might make sense because it provides some consistency in comparison, the current statute allows the district court to consider "evidence regarding changes in value of various assets before and after the valuation date in making the division of property." K.S.A. 23-2802(b). The point of the property division is to reach a just and reasonable property division, and in doing so, the district court might find it appropriate to consider the change in some property's value. See *In re Marriage of Rodriguez*, 266 Kan. at 352-54; see also *In re Marriage of Wood*, 2020 WL 6685537, at *11-12.

To be clear, the district court's mistaken belief that it was bound by federal law in setting the amount to award Saunders was an error of law. While the federal law establishes Grzesinski's "disposable retired pay," it is in the district court's purview to determine the just and equitable division of that marital property. See K.S.A. 23-2802(a); *In re Marriage of Rodriguez*, 266 Kan. at 353. Therefore, in addressing this issue on remand, the district court is not confined to any specific federal formula when allocating Grzesinski's military retirement between the parties. Rather, the district court must determine a just and reasonable division of the military retirement pay considering the factors in K.S.A. 23-2802(c) related to the military retirement pay and relative to the total property division. It may be that the district court arrives at the same property division— whether applying the federal formula or not—but it must do so with a proper understanding of its discretionary authority to determine the valuation date pursuant to K.S.A. 23-2802(b) and to fashion a just award pursuant to K.S.A. 23-2802(c).

b.  *Home Bank accounts ending in 4110 and 4228*

The district court's order identifies two Home Bank accounts, 4110 and 4228, as marital property and then allocates the amount in both to Grzesinski. In doing so, Grzesinski argues the district court abused its discretion because there was no substantial competent evidence presented that supported a factual finding that those accounts belonged to him. Rather, Grzesinski contends, all the evidence in the record supports a finding that those accounts belong to Saunders and therefore the accounts should have been allocated to her. Saunders' brief does not specifically address these claims.

In reviewing a district court's findings under an abuse of discretion standard, the district court commits an error of fact when its factual findings are not supported by substantial competent evidence. See *Einsel*, 304 Kan. 567, Syl. ¶ 1. "Substantial competent evidence is such legal and relevant evidence as a reasonable person might

18

accept as sufficient to support a conclusion." *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, Syl. ¶ 10, 509 P.3d 1211 (2022).

The evidence about the bank accounts was mixed. Recent bank statements for both accounts were admitted into evidence at trial:  account 4110 listed Grzesinski as an account holder and account 4228 identified Saunders as the account holder. But Saunders' name was also included in the mailing address for account 4110, and the district court noted that it was identified in Exhibit 62 as a joint account. Grzesinski testified that account 4228 was Saunders' individual account but never testified that the account ending in 4110 belonged exclusively to Saunders.

The evidence supports a factual finding that account 4110 was a joint account but that Saunders likely had exclusive use of account 4228. However, a spouse's ownership or exclusive use of a bank account is not the only criterion for determining how to divide the property. See K.S.A. 23-2802(c) (identifying the criteria for consideration in dividing property). The district court identified both accounts as marital property, which is accurate, and did not include any erroneous factual findings about the accounts.

Having identified no error of law or fact, the district court's division of that property only constitutes an abuse of discretion if "no reasonable person would have taken the view adopted by the trial court" to assign the amounts from both accounts to Grzesinski. *In re Marriage of Wherrell*, 274 Kan. at 986 (property division is reviewed for abuse of discretion); *Einsel*, 304 Kan. 567, Syl. ¶ 1 (explaining the abuse of discretion standard). After identifying the marital property, the court has broad discretion to divide that property in a just and reasonable manner. While it appears Saunders exclusively used account 4228 during their marriage, that does not mean the court's allocation of that property to Grzesinski is unreasonable under the circumstances. In dividing property, courts frequently make balancing determinations to reach a just and reasonable division, and Grzesinski fails to demonstrate the unreasonableness of that decision. This court

19

cannot say that the decision regarding these bank accounts constituted an abuse of discretion.

    c. *The parties' 401(k) plans*

Grzesinski contends that the district court erred in its valuation of the parties' 401(k) plans and its mathematical calculations. While Grzesinski appears to primarily object to the district court's mathematical calculation of Saunders' MGM 401(k), his resulting claim is that the court erred in the amount included as marital property. In response, Saunders fails to respond to Grzesinski's claim but justifies the ultimate result by pointing to different values than the court used to justify its result. However, the legal error in the court's decision regarding Saunders' MGM 401(k) makes any mathematical computation errors irrelevant.

The district court's memorandum order carved out a significant portion of Saunder's MGM 401(k) as "premarital property" that "is not subject to division." The court then set forth amounts from Saunders' Mohawk 401(k) and Grzesinski's Spirit 401(k) as marital property. However, contrary to the district court's designation, the entire value of both parties' 401(k) accounts are marital property subject to division in the divorce proceedings. See K.S.A. 23-2801(a); K.S.A. 23-2802(a), (c).

Marital property is "[a]ll property owned by married persons . . . whether described in K.S.A. 23-2601 [as separate property] . . . or acquired by either spouse after marriage, and whether held individually or by the spouses in some form of co-ownership . . . ." K.S.A. 23-2801(a). This means that Saunders' entire 401(k)—even amounts acquired or earned before marriage—is marital property. K.S.A. 23-2801(a); K.S.A. 23-2802(a). In a divorce proceeding, the court shall divide "any retirement and pension plans, *whether owned by either spouse prior to marriage*, acquired by either spouse in the

20

spouse's own right after marriage or acquired by the spouses' joint efforts." (Emphasis added.) K.S.A. 23-2802(a).

Therefore, the district court erred as a matter of law in identifying portions of Saunders' MGM 401(k) as "premarital property" that was "not subject to division." Additionally, if the district court similarly designated any portions of Grzesinski's 401(k) accounts as nonmarital property, that was an error. The entire amount of both parties' 401(k) plans and military retirement pay—whether vested or unvested—is marital property subject to division in a divorce proceeding. Once identified as marital property, the district court must then consider the elements in K.S.A. 23-2802(c) to divide the property. One of the considerations in dividing the marital property includes "the time, source and manner of acquisition of the property." K.S.A. 23-2802(c)(5).

On remand, the district court must address the division of the parties' entire 401(k) accounts pursuant to K.S.A. 23-2801 and K.S.A. 23-2802. This includes consideration of the time, source, and manner of acquisition of those accounts. K.S.A. 23-2802(c)(5). Should the district court determine that under K.S.A. 23-2802(c) the just and reasonable division would assign Saunders the entire value of the MGM 401(k) before the marriage, it would simply subtract that pre-marriage value from the total value. The court would then need to reduce the remaining value by its tax figure and divide it between the parties in accordance with K.S.A. 23-2802(c)(5). The district court must accurately calculate the values of the 401(k) accounts relative to tax reductions because mathematical miscalculations can constitute an abuse of discretion. See, e.g., *In re Marriage of Emerson*, No. 118,219, 2018 WL 3485663, at *5-6 (Kan. App. 2018) (unpublished opinion) (finding abuse of discretion based upon miscalculation, reversing denial of motion to amend, and remanding to correct the calculation).

Again, on remand the district court might determine that the designation of the entire value of both parties' 401(k) accounts as marital property does not alter the district

21

court's ultimate just and reasonable property division, but this court cannot make that determination.

### d. *Mortgage payments*

Finally, Grzesinski contends that the district court abused its discretion when it credited Saunders for her postpetition mortgage payments *and* awarded her the marital residence without adjusting the value of the home's equity during the same period. The district court awarded Saunders the marital home and credited her with $27,388 in mortgage payments and an additional $10,439 in back property taxes that she paid during the pendency of the divorce proceedings. According to Grzesinski, the district court permitted Saunders a double recovery because Saunders received the "value associated with the parties' marital residence twice: Once when the trial court awarded the marital residence to [Saunders], and a second time when the trial court gave [Saunders] credit for payments she made towards the mortgage debt encumbering the same property."

In determining the equalization value of the marital home, the district court averaged the 2019 county appraisal of $284,000 and the February 2019 independent appraisal of $272,000. According to the district court's memorandum order, Grzesinski argued that the property should have been valued at $315,397 by citing to a "Zestimate" of $312,201 printed from the Zillow website. The court calculated the mortgage principal owed averaging the parties' very similar submitted amounts of $178,135 and $178,467. In this opinion, the amount owed necessary to pay off the mortgage principal is referred to as the mortgage debt and the amount paid each month toward the mortgage principal that also includes an amount toward the taxes, interest, and insurance is referred to as the mortgage payment.

In Grzesinski's July 13, 2021 objections to the journal entry, he argued the district court erred by valuing the property as of 2019 rather than closer to the date of the divorce

decree in 2021 while also crediting Saunders with 24 months of mortgage payments while the divorce was pending. Grzesinski cites a recent decision from a panel of this court in which the district court credited the party who stayed in the marital home with a *reduction in mortgage principal* based on mortgage payments but did not similarly account for an increase in the home's equity during that time. *In re Marriage of Elfgren and Hendrickson*, No. 126,458, 2024 WL 2789635, at *8-9 (Kan. App. 2024) (unpublished opinion). The facts in *Elfgren* are distinguishable in that the court credited the actual reduction in the mortgage debt that the mortgage payments effectuated and then credited the *reduction in mortgage principal*, and the panel reasoned that it resulted in a double credit. The panel explained that the district court separately addressed the residential property taxes and the reduction in mortgage principal. 2024 WL 2789635, at *8-9.

Here, unlike in *Elfgren*, the district court did not credit Saunders with the amount that the mortgage payments she made reduced the mortgage principal. The total credit awarded Saunders of $37,827 does not represent a reduction in the mortgage principal like in *Elfgren*. Of the total credit, $10,439 represents back taxes that are marital debt and the remaining $27,388 includes mortgage principal, property taxes, and property insurance during the pendency of the divorce proceeding that Saunders paid.

Grzesinski does not claim the district court made an error of fact or law in its value determination or calculations. Rather, he merely argues the district court's decision to credit Saunders for her payments while applying the values from the 2019 appraisals and the debt set forth by the parties is unreasonable. Grzesinski cites no evidence in the record refuting the district court's property value or mortgage debt findings. Instead, in making this argument both to the district court and on appeal, Grzesinski asks the court to make two major assumptions in his favor—that the mortgage debt decreased by an unidentified amount and that the property value increased from the values submitted to

the court. Grzesinski failed to cite any credible evidence in the record that the home's value increased or that the mortgage debt decreased during that timeframe.

While one could logically assume that Saunders' mortgage payments reduced the mortgage debt by some amount, Grzesinski cites no evidence of that reduction. Instead, in his objections to the district court's journal entry, Grzesinski stated the mortgage debt "should be reduced by the additional mortgage payments in the amount of $27,388.00" and then stated the "estimated new value should be $150,863," apparently concluding—with no support—that every dollar paid in mortgage payments during the pendency of the divorce reduced the mortgage debt owed. Nothing in the record supports a finding that the parties' mortgage payments resulted in a dollar-for-dollar reduction in mortgage debt.

In contrast, Saunders cites to similarly dubious calculations to assert that the mortgage payments resulted in virtually no reduction in mortgage debt—less than $1,000. This court's understanding of mortgage interest and basic math leads to an estimated mortgage principal reduction closer to $6,000-$9,000. Yet, even if that reduction occurred as of the date of the divorce decree, nothing in the record demonstrates the property's value at that same time. Although both parties have access to the actual reduction in mortgage principal and could have obtained updated credible property valuations closer to the divorce decree, neither provided such to the district court.

This court is tasked with determining whether the district court's decision constitutes an abuse of discretion based on the record available to the district court. See, e.g., *In re Marriage of Cray*, 254 Kan. at 391 ("the selection of a valuation date rests in the sound discretion of the trial court *under the facts and circumstances before the court*" [emphasis added]). Grzesinski does not direct this court to any evidence in the record that undermines or contradicts the district court's factual findings regarding either the property value or the mortgage debt. Saunders' mortgage payments went to more than mortgage principal reduction and included other debt payments such as taxes, interest, and

24

insurance. While Grzesinski raises an interesting issue, he is left without much recourse from the available record and the arguments asserted.

Rather than changing the mortgage valuation, Grzesinski might be contending that the district court should simply not credit Saunders for any of the mortgage payments. It appears Grzesinski's true complaint is that by crediting Saunders with the total mortgage payment (including principal, taxes, interest, and insurance), she received credit for her living expenses during the pendency of the divorce. Or perhaps he believes that the taxes and insurance paid through the mortgage payment should have been split between them. But, Grzesinski fails to make either argument, and only argues that the district court created a double credit by awarding Saunders the marital home *and* credit for mortgage payments. But nothing in the record demonstrates that the mortgage payments reduced the mortgage debt compared to the home's value at that same time such that it would have created an unreasonable double award. While crediting the party awarded a residential property with the amount that same party paid in mortgage payments during the pending divorce likely results in some amount of debt shifting, the court may shift assets and liabilities to reach a just and equitable result considering the parties' overall financial positions. Grzesinksi has failed to show the district court's decision constituted an abuse of discretion.

## II.     GRZESINSKI'S DUE PROCESS CLAIMS

Grzesinski claims he was denied due process when the district court ordered Saunders to engage the services of an expert to calculate his military retirement pay, relied on the expert's proposed calculations without a hearing, and ordered Grzesinski to pay the expert's fees. Contrary to his contentions, Grzesinski did not object to the appointment of the expert at trial but merely objected to the district court ordering him to pay the expert's fees. Generally, issues not raised before the district court cannot be raised on appeal. *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022).

Apparently recognizing his failure to preserve his claim for appeal, Grzesinski unpersuasively argues that his claim satisfies a preservation exception permitting prudential consideration of unpreserved claims to prevent denial of his fundamental rights. See *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021) (explaining exceptions permitting appellate review of unpreserved claims). Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36) "requires appellants to explain why an appellate court should hear an issue raised for the first time on appeal, and failure to comply with this rule may result in a finding that the appellant has abandoned the issue." *State v. Farmer*, 312 Kan. 761, Syl. ¶ 3, 480 P.3d 155 (2021).

Grzesinski had ample opportunity through his numerous motions and objections to notify the district court of his objection to the use of an expert, but he chose not to do so. Perhaps that was a strategic choice in hopes that the expert's opinion would benefit him or to obtain the expert's associated work product. Grzesinski did not seek to prevent the district court's use of the expert until he received the benefit of knowing the expert's opinion, and he now seeks to second guess that through an unpreserved due process claim. Where, as here, the appellant had an opportunity to object to the district court but neglected or chose not to, this court cannot say it is necessary to extend prudential review of the unpreserved claim to prevent a denial of a fundamental right. Moreover, because this opinion reverses and remands the district court's property division, Grzesinski's underlying concern is addressed.

### III.    THE DISTRICT COURT'S ATTORNEY FEE AWARD

Finally, Grzesinski appeals the district court's award of $2,094.60 in attorney fees to Saunders. In so doing, the court stated that Grzesinski caused Saunders "to incur unnecessary attorney fees, interest and damages for delay related to" his second motion to alter or amend. While Grzesinski concedes that district courts generally have authority to

26

award attorney fees in divorce proceedings, he argues that the district court abused its discretion because the judgment was punitive and his motions should have been meritorious. See *Dunn v. Dunn*, 3 Kan. App. 2d 347, 348-50, 595 P.2d 349 (1979) (finding judge's attorney fee award was partially intended to discourage future motions and did not consider the relative financial ability of the parties).

"The Kansas Family Law Code authorizes Kansas courts to award attorney fees in divorce, separate property, or annulment cases 'to either party as justice and equity require.'" *In re Marriage of Williams*, 307 Kan. at 982; see *In re Marriage of Nelson*, 58 Kan. App. 2d 920, Syl. ¶ 11, 475 P.3d 1284 (2020) ("District courts have broad discretion to award costs and attorney fees to either party in a divorce case as justice and equity require."); see also K.S.A. 23-2715 ("Costs and attorney fees may be awarded to either party as justice and equity require."). District courts have broad discretion in determining an attorney fee award. This court reviews such an award for an abuse of discretion in the same manner as explained above in this opinion. *Williams v. Williams*, 52 Kan. App. 2d 440, 452, 367 P.3d 1267 (2016); see *Einsel*, 304 Kan. 567, Syl. ¶ 1. Once again, Grzesinski carries the burden of showing an abuse of discretion. *In re Parentage of R.R.*, 317 Kan. 691, Syl. ¶ 3.

Grzesinski argues, in part, that the district court abused its discretion in awarding Saunders attorney fees because his motion correctly identified the district court's errors and should have been meritorious. Therefore, according to Grzesinski, Saunders should not be entitled to attorney fees for responding to a nonfrivolous motion. Grzesinski cites no authority prohibiting the award of attorney fees in divorce proceedings when the fees resulted from permissible or even meritorious proceedings. Moreover, a district court's error in its application or understanding of the law should not be imputed to a party such that it prevents an otherwise appropriate award of attorney fees.

Additionally, the record does not support Grzesinski's argument that the attorney fee award was merely punitive. This case is not like *Dunn* where the district court awarded attorney fees to prevent future filings because of the court's expressed concern for the State resources expended during the parties' child custody and parenting time dispute. See 3 Kan. App. 2d at 349. Rather, the district court made a small attorney fee award linked to specific costs with no evidence it intended to prevent future filings. Moreover, Grzesinski understates the purpose of his second motion to amend. While the motion addressed some new orders from the district court's response to his previous motion to amend, Grezsinski also attempted to relitigate some issues that a litigant could reasonably have expected to be resolved.

The district court's criteria for awarding attorney fees is merely whether the award is required by justice and equity. See K.S.A. 23-2715. There is no evidence that the district court failed to consider the relative financial position of the parties or sought to prevent future or continued litigation related to a party's fundamental rights.

Even if a reasonable person—or this court—might not have awarded attorney fees in this circumstance, that is insufficient to warrant reversal. Given the totality of this litigation, the court cannot say that no reasonable person would have agreed with the district court's determination that equity and justice required that Grzesinksi pay Saunders $2,094.60 in attorney fees. Grzesinski failed to show that the district court abused its wide discretion in awarding attorney fees to Saunders.

CONCLUSION

The district court's property division is reversed and remanded with directions. The district court erred in its determination that it was legally required to follow a federal formula for the division and valuation date of Grzesinski's military retirement pay. The

record reflects that the district court did not realize the extent of its discretion to award a just and reasonable division of Grzesinksi's military retirement.

Additionally, the district court erred in designating portions of the parties' 401(k) accounts as premarital property not subject to division. While this court recognizes that district courts may use the term "separate property" colloquially and still consider that property in its equitable property division under K.S.A. 23-2802(c), it is unclear if that is what occurred here as related to the parties' 401(k) accounts. Finally, Grzesinski fails to demonstrate the district court abused its discretion in its division of the two bank accounts at issue or the valuation of the marital property and award of mortgage payment credits to Saunders.

The district court's fundamental task is to fairly and equitably allocate the divorcing parties' assets and liabilities, consistent with the statutory directives. The overall distribution must achieve that fairness and equity. If a district court errs in how it allocates a particular asset or liability, the overall equitable balance has been disturbed. On remand, the district court has the authority and obligation to reassess all of the other individual allocations. Therefore, the district court should consider the full property division to ensure its ruling accurately identifies the marital property, properly considers the statutory criteria, and reaches a just and reasonable result. That does not mean, however, that those allocations must be modified. But they should be reconsidered with the aim of reaching the required overall equitable apportionment.

Finally, Grzesinksi failed to preserve his due process claim or demonstrate the court abused its discretion in awarding attorney fees.

Reversed and remanded with directions.